Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| JOSÉ DAVID HERNÁNDEZ DÁVILA  Recurrido  v.  BELLA INTERNATIONAL, LLC. FIRSTBANK PUERTO RICO  Recurrentes | KLRA202500296 | REVISIÓN ADMINISTRATIVA Procedente del Departamento de Asuntos del Consumidor  Querella Núm. **SAN-020-0006848**  Sobre: **Compra Venta de Vehículos de Motor** |
|---|---|---|

Panel integrado por su presidenta la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 8 de agosto de 2025.

Comparece ante nos, Bella International LLC h/n/c Acura de San Juan, en adelante, Bella International o recurrente, mediante *Recurso de Revisión Judicial* y nos solicita que revoquemos la *"Resolución"* emitida por el Departamento de Asuntos del Consumidor, en adelante, DACo, el 21 de marzo de 2025 y notificada el 24 de marzo de 2025. En la misma, DACo determinó que procedía una resolución de un contrato y la devolución de cincuenta y nueve mil setecientos noventa y nueve dólares ($59,799.00) más intereses legales al señor José David Hernández Dávila, en adelante Hernández Dávila o recurrido.

Por los fundamentos que expondremos a continuación, *confirmamos* la determinación de DAco.

### I.

El 31 de octubre de 2018, Hernández Dávila compró un vehículo de motor modelo Acura A-Spee del año 2019, por la cantidad de cincuenta y nueve mil setecientos noventa y nueve

dólares ($59,799.00).[1] Surge de las alegaciones de Hernández Dávila que, como parte de la compra del automóvil, se acordó una instalación de varios accesorios en los que se encontraban: Spare Tire Kit, All Weather Mar, Cargo Mat, Cargo Cover, Tratamiento de pintura Dupont Automotive Paint Protection y un Sistema de Hands-Free Access Power Tailgate.[2]

Además, entre las partes pactaron un *"Acuerdo Suplementario y/o Contingente"* en el que establecieron que, en caso de que surgiera una eventualidad de que el vehículo comprado sea entregado al comprador y el negocio jurídico sea resuelto, anulado o decretado nulo, el comprador autorizaba al vendedor a retener cualquier suma acreditada por concepto de algún pronto de pago y la cuantía de noventa y cinco centavos $0.95 por milla recorrida por parte del comprador por concepto de uso.[3]

Por otra parte, el recurrido arguyó en su petitorio, que la unidad requería la instalación de accesorios o sistemas adicionales el día de la compraventa, entiéndase el 31 de octubre de 2018. Por esta razón, el concesionario retuvo la unidad para realizar las instalaciones mencionadas anteriormente.[4]

Tras haber transcurrido cinco (5) días de la compra del automóvil, Hernández Dávila alegó que se comunicó con Miguel Ángel Martínez, en adelante, el vendedor, para que le indicara si la unidad se encontraba lista para recogerlo. El vendedor le indicó al recurrido que todavía el auto no se encontraba listo para ser entregado, debido a que faltaban unas piezas para instalar que no las tenía disponibles.[5]

Surge del pliego que, el 7 de noviembre de 2018, el vendedor le indicó por mensaje de texto al recurrido, que estaría llevando su

---

[1] Apéndice del Recurso, pág. 9.
[2] *Id.*, pág. 9.
[3] *Id.*, pág. 93.
[4] *Id.*
[5] *Id.*, pág. 10.

auto a la unidad de servicio Acura, para que le instalaran el accesorio de Spare Tire Kit. Asimismo, el vendedor indicó que iba a validar si era cierto que el Hands-Free Access Power Tailgate no estaba disponible para el auto en controversia.[6] En respuesta a lo anterior, el recurrido reclamó que se le había vendido el auto con dicho accesorio. Sin embargo, el vendedor le respondió **"que lo entendía pero que, si en mi unidad no se puede, no se puede"**.[7]

Posteriormente, para el 8 de noviembre de 2018, Hernández Dávila vuelve a comunicarse con el concesionario para saber cuándo se le podría entregar su unidad. A lo que le respondieron que no le podían instalar al vehículo el sistema Hands-Free Access Power Tailgate porque no era compatible con el sistema de la unidad. Para subsanar esta falta, el vendedor le ofreció como alternativa otro accesorio para no retener por más tiempo la unidad de Hernández Dávila. Así que, el recurrido aceptó dicha oferta para poder tener su auto.[8]

Finalmente, el *10 de noviembre de 2018*, se le entregó la unidad al recurrido. No obstante, Hernández Dávila alegó que, se le entregó su auto sin la instalación del accesorio ofrecido en sustitución al Hands-Free Access Power Tailgate.[9]

Surgen de las alegaciones del recurrido, que ha tenido que llevar su unidad al concesionario desde noviembre del año 2018 hasta mayo del año 2020, unas dieciocho (18) veces. Esto con el fin de que se le corrigieran múltiples desperfectos que surgieron desde que compró el automóvil.[10]

Así las cosas, el 18 de mayo de 2020, Hernández Dávila presentó una *"Querella"* ante DACo sobre compraventa de vehículos

---

[6] Apéndice del Recurso, pág. 10.
[7] *Id.*, pág. 10
[8] *Id.*, pág. 11.
[9] *Id.*
[10] *Id.*, págs. 11-12.

de motor, resolución del contrato y saneamiento.[11] En la misma, el recurrido esbozó todas las situaciones mencionadas anteriormente sobre los defectos de su vehículo. También mencionó en la aludida querella que, hasta la fecha su unidad no estaba funcionado como era debido por los desperfectos de fábrica que no habían sido arreglados. Además, alegó que los desperfectos eran preexistentes a la venta.

A tenor con lo anterior, el recurrido le solicitó al DACo que ordenara a Bella International a que le pagara una indemnización por daños de veinte mil dólares ($20,000.00), la resolución del contrato y la devolución de quince mil ciento treinta y siete dólares con setenta y cinco centavos ($15,137.75) por las mensualidades pagadas.[12] En respuesta, el 23 de julio de 2020, Bella International presentó "*Contestación a la Querella*", solicitando que se desestimara la querella.[13]

Examinados los planteamientos esbozados por las partes, el DACo realizó una inspección el 9 de septiembre de 2020.[14] De la inspección se desprende que, el Hand-Free Access Power Tailgate no estaba instalado en el vehículo de Hernández Dávila. Sin embargo, según las alegaciones de las partes, se instaló un Roof Rails en sustitución del accesorio que no había sido instalado.[15]

Surge del expediente, que el recurrido solicitó enmendar su querella, por lo cual, presentó el 15 de noviembre de 2021, una "*Querella Enmendada*".[16] En la referida querella, el recurrido añade más eventos sobre los desperfectos que seguían surgiendo en su unidad.

---

[11] Apéndice del Recurso, pág. 8.
[12] *Id.*, pág. 22.
[13] *Id.*, pág. 23.
[14] *Id.*, pág. 40.
[15] *Id.*, pág. 41.
[16] *Id.*, pág. 51.

En desacuerdo, Bella International presentó el 7 de diciembre de 2021, *"Oposición a que se Permita Querella Enmendada Según Redactada y en Solicitud de Reinspección"*.[17] En la aludida moción, Bella International solicitó a DACo que no acogiera la *"Querella Enmendada"*, porque el recurrido no estaba en posición de enmendar la querella original para incluir alegaciones de defectos que surgían de la misma. Igualmente arguyó, que las alegadas condiciones defectuosas mencionadas por el recurrido no habían sido objeto de inspección por lo cual solicitó al DACo que se hiciera una inspección técnica.[18]

El 6 de mayo de 2022, DACo emitió una *"Resolución Parcial"* en donde acogió la *"Querella Enmendada"* y le ordenó a Bella International a contestar la querella.[19] En cumplimiento de orden, Bella International presentó el 13 de junio de 2022, *"Contestación a Querella Enmendada"* en la cual ordenó nuevamente que se desestimara la querella.[20]

Luego de las vistas celebradas los días 10 y 11 de diciembre de 2024 y 18 y 19 de febrero de 2025, el *21 de marzo de 2025*, el DACo emitió una *"Resolución"*.[21] En esta, declaró *Con Lugar* la querella presentada, decretó la resolución del contrato y la devolución de las contraprestaciones. Asimismo, le ordenó a Bella International que en un término de treinta (30) días, a partir de la fecha de notificación de la resolución, devolvieran a Hernández Dávila la cantidad de cincuenta y nueve mil setecientos noventa y nueve dólares ($59,799.00) más los intereses legales correspondientes, en caso de que incumpliera con el plazo concedido. DACo también agregó que una vez Bella International

---

[17] Apéndice del Recurso, pág. 68.
[18] *Id.*, pág. 70.
[19] *Id.*, pág. 71.
[20] *Id.*, pág. 75.
[21] *Id.*, pág. 172.

cumpliera con lo ordenado, Hernández Dávila debía entregar el vehículo al concesionario y realizar el traspaso correspondiente.[22]

Insatisfecho con el dictamen, Bella International presentó el 11 de abril de 2025, una "*Moción de Reconsideración*".[23] Entre sus planteamientos, alegó que entre las partes se suscitó un contrato suplementario y que procedía que se le restara al recurrido noventa y cinco centavos $0.95 por cada milla recorrida del vehículo en controversia. En respuesta, Hernández Dávila presentó "*Moción de Reconsideración y en Oposición a Reconsideración*".[24] El Foro Administrativo determinó *No Ha Lugar* a ambas mociones de reconsideración.[25]

Inconforme con la determinación de la Agencia, el recurrente acude ante nos mediante un recurso de "*Revisión Judicial*" haciendo los siguientes señalamientos de error:

> **Primer error**: Erró el Honorable Departamento al concluir que la prueba presentada durante la vista administrativa estableció que las condiciones alegadas por la parte querellante no fueron corregidas por Acura de SJ.
> **Segundo error**: Erró el Honorable Departamento al fundamentar la resolución del contrato en una condición supuestamente no corregida, sin que se pudiera determinar que la misma constituía un vicio redhibitorio.
> **Tercer error**: Erró el Honorable Departamento al determinar que procede la devolución de lo pagado por el vehículo objeto, cuando el negocio que se pretende dejar sin efecto fue un arrendamiento financiero.
> **Cuarto error**: Erró el Honorable Departamento al obviar los acuerdos entre las partes y no aplicar la cantidad de $0.95 por milla recorrida ante la resolución del contrato.

Mediante *"Resolución"* del 28 de mayo de 2025, concedimos a la recurrida hasta el 23 de junio de 2025 para presentar su posición en cuanto al recurso. Por otro lado, el 10 de junio de 2025,

---

[22] Apéndice del Recurso, pág. 192.
[23] *Id.*, pág. 196.
[24] *Id.*, pág. 205.
[25] *Id.*, pág. 241.

concedimos hasta el 25 de junio de 2025 para que la parte recurrente presentara la transcripción de las vistas celebradas en el caso de marras.

En cumplimiento, la parte recurrida compareció el 23 de junio de 2025 mediante escrito titulado *"Oposición a Recurso de Revisión Judicial"*. Finalmente, el 21 de julio de 2025 recibimos la transcripción de la prueba oral solicitada.

Con el beneficio de la comparecencia de ambas partes, y analizado extensamente la transcripción, procedemos a resolver.

**II.**

### A. Revisión Judicial de Agencias Administrativas

La revisión judicial de decisiones administrativas tiene como fin, "asegurar que los organismos administrativos actúan conforme a las facultades concedidas por ley". *Vázquez, Torres vs. Consejo de Titulares et al.*, 2025 TSPR 56, 215 DPR ___ (2025); *Jusino Rodríguez vs. Junta de Retiro*, 2024 TSPR 138, 215 DPR ___ (2024); *OEG vs. Martínez Giraud*, 210 DPR 79, 88 (2022). En vista de ello, esta doctrina nos exige "examinar si las determinaciones de las agencias administrativas se tomaron dentro de los poderes delegados y son compatibles con la política pública que las origina". *Rolón Martínez vs. Supte. Policía*, 201 DPR 26, 35 (2018).

Sabido es, que los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados por la Asamblea Legislativa. *Katiria's Café, Inc vs. Mun. San Juan,* 2025 TSPR 33, 215 DPR ___ (2025); *Otero Rivera vs. USAA Fed. Savs. Bank*, 2024 TSPR 70, 213 DPR ___ (2024); *Voilí Voilá vs. Mun. Guaynabo,* 213 DPR 743, 754 (2024); *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 114 (2023); *OEG v. Martínez Giraud,* supra, págs., 88-89; *Super Asphalt v. AFI y otro*, 206 DPR 803, 819

(2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, supra, pág. 35. Es por ello, que, tales determinaciones suponen una presunción de legalidad y corrección que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Katiria's Café, Inc vs. Mun. San Juan,* supra*; Transp Sonell, vs. Jta. Subastas*, ACT, 2024 TSPR 82, 214 DPR ___ (2024); *Otero Rivera vs. USAA Fed. Savs. Bank,* supra; *Jusino Rodríguez vs. Junta de Retiro*, supra.

El Art. 4.006 de la Ley de la Judicatura de 2003, 4 LPRA sec. 24y, establece en su inciso (c) la competencia del Tribunal de Apelaciones. A esos efectos, dispone que este Foro conocerá mediante recurso de revisión judicial, las decisiones, *órdenes y resoluciones finales* de organismos o agencias administrativas. *Simpson, Passalacqua vs. Quirós, Betances,* 2024 TSPR 64, 214 DPR ___ (2024)*; AAA v. UIA,* 200 DPR 903, 910-911 (2018); *Depto. Educ. v. Sindicato Puertorriqueño*, 168 DPR 527, 543 (2006); *Procuradora Paciente v. MCS,* 163 DPR 21, 33-34 (2004).

Por su parte, la Sección 1.3 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, en adelante, LPAUG, 3 LPRA sec. 9601, define "orden o resolución" como "cualquier decisión o acción agencial de aplicación particular que adjudique derechos u obligaciones de una o más personas específicas, o que imponga penalidades o sanciones administrativas, excluyendo órdenes ejecutivas emitidas por el Gobernador".

La Sec. 4.2 de la LPAUG, supra, sec. 9672, también establece que la revisión administrativa ante el Tribunal de Apelaciones *se hará respecto a las órdenes o resoluciones finales,* luego de que el recurrente haya agotado "todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente". Es

decir, no serán revisables directamente a este Tribunal las órdenes o resoluciones interlocutorias de una agencia, esto es, aquellas que se emitan durante los procesos administrativos que se desarrollan por etapas, y no sean finales. A esos efectos, esta misma sección provee que la disposición interlocutoria de la agencia *podrá ser objeto de un señalamiento de error en el recurso de revisión de la orden o resolución final de la agencia.*

A pesar de que la LPAUG no define el término "orden o resolución final", esta contiene una descripción de lo que tiene que incluir para ser considerada final. *Simpson, Passalacqua vs. Quirós, Betances,* supra. En su Sección 3.14, supra, sec. 9654, este cuerpo estatutario requiere que se incluyan determinaciones de hecho y las conclusiones de derecho que fundamentan la adjudicación, además de añadir la advertencia del derecho a solicitar una reconsideración o revisión, según sea el caso. *J. Exam. Tec. Méd. V. Elías et al.,* 144 DPR 483, 489-490 (1997).

Por su parte, el Tribunal Supremo de Puerto Rico ha establecido que para que una orden emitida por una agencia pueda ser revisada ante el Tribunal de Apelaciones, deben cumplirse dos requisitos: (i) que la parte adversamente afectada por la orden haya agotado los remedios provistos por la agencia y (ii) que la resolución sea final y no interlocutoria. *Simpson, Passalacqua vs. Quirós, Betances,* supra. *Depto. Educ. v. Sindicato Puertorriqueño*, supra, pág. 543; *Procuradora Paciente v. MCS,* supra, págs. 34-35. Se entiende como final, la orden o resolución emitida por la última autoridad decisoria o adjudicativa de la agencia administrativa. *Bird Const. Corp. v. A.E.E.,* 152 DPR 928, 935 (2000). Nuestro Alto Foro lo ha descrito como una orden o resolución que "le ponga fin al caso ante la agencia y que tenga efectos sustanciales sobre las partes". *Crespo Claudio v. O.E.G.,* 173 DPR 804, 812-813 (2008); *Comisionado Seguros v. Universal,* 167 DPR 21, 28-29 (2006).

Con relación a la deferencia, la determinación administrativa no será mantenida por los tribunales cuando: a) no esté basada en evidencia sustancial; b) ***el ente administrativo haya errado al aplicar o interpretar las leyes o los reglamentos que se le han encomendado administrar;*** c) el organismo administrativo haya actuado de forma arbitraria, irrazonable, ilegal o cometido abuso de discreción, realizando determinaciones carentes de una base racional; o d) cuando la actuación administrativa lesiona derechos constitucionales fundamentales. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra; *Hernández Feliciano v. Mun. Quebradillas*, supra, pág. 114*; Torres Rivera* v. *Policía de PR,* 196 DPR 606, 628 (2016). (Énfasis suplido).

Los tribunales, para lograr su encomienda, deberán evaluar los siguientes tres (3) aspectos: 1) si el remedio concedido fue el apropiado; 2) si las determinaciones de hecho están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad; y 3) si se sostienen las conclusiones de derecho realizadas por la agencia. *Hernández Feliciano v. Mun. Quebradillas*, supra, pág. 115; *OEG* v. *Martínez Giraud,* supra, pág. 89; *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839-840 (2021); *Torres Rivera v. Policía de Puerto Rico,* supra, págs. 626-627.

### B. Deferencia Administrativa

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, en adelante LPAUG, dispone el alcance de la revisión judicial de las determinaciones de las agencias. Ley Núm. 38 de 30 de junio de 2017, 3 LPRA sec. 9601 *et seq.* Tanto la referida Ley, como la jurisprudencia aplicable, establecen que la función revisora de las decisiones administrativas concedida a los tribunales apelativos consiste esencialmente en determinar si la actuación de la agencia fue dictada dentro de las facultades que le fueron

conferidas por ley, y si la misma es legal y razonable. *Hernández Álvarez* v. *Centro Unido, supra,* pág. 119-122; *T-JAC* v. *Caguas Centrum,* 148 DPR 70, 80 (1999).

Por lo tanto, los tribunales deben ser cautelosos al intervenir con las decisiones administrativas. *Empresas Loyola v. Com. Ciudadanos,* 186 DPR 1033, 1041 (2012).

Nuestro más Alto Foro ha establecido que las decisiones de las agencias administrativas tienen una **presunción de regularidad y corrección**, haciendo necesario que aquel que desee impugnar dichas decisiones, presente evidencia suficiente que derrote la misma, y no descanse en meras alegaciones. *García Reyes* v. *Cruz Auto Corp.*, 173 DPR 870, 892; *Vélez* v. *ARPE,* 167 DPR 684, 693 (2006). Conforme lo ha interpretado nuestro Tribunal Supremo, la revisión judicial de este tipo de decisiones se debe limitar a determinar si la actuación de la agencia es *arbitraria, ilegal,* o tan *irrazonable* que la misma constituye un abuso de discreción. *Rebollo v. Yiyi Motors,* 161 DPR 69, 76 (2004). (Énfasis nuestro).

Sin embargo, la deferencia hacia las decisiones administrativas no es automática. *En Vázquez, Torres vs. Consejo Titulares et al.,* 2025 TSPR 56, 215 DPR ___ (2025) se estableció que:

> [l]a interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. Así, enfatizamos la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU, supra. Como corolario, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, *será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos.* (Énfasis súplido).

### C. Ley Núm. 5 del 23 de abril de 1973, Ley Orgánica del Departamento de Asuntos al Consumidor

El Derecho Administrativo es, precisamente, el mejor campo para observar la forma y manera en la que el gobierno ejecuta sus facultades y potestades, pues, aquel gobierno que establece normas y política pública sin la estructura y la capacidad de materializarlas

ha de ser uno irrelevante. En ese sentido, las Agencias y el Derecho Administrativo son pieza fundamental del Estado y sus administradores en la ejecución de su política pública. Este nace como resultado de la necesidad del gobierno en generar conocimiento especializado para satisfacer las necesidades de una sociedad cada vez más compleja. Véase J. Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, 5ta ed. rev., San Juan, Ed. Situm, 2023, págs. 1-4.

Como regla general, las Agencias Administrativas son entidades creadas por la Asamblea Legislativa y adscritas al Poder Ejecutivo. En Puerto Rico la Sección 16 del Artículo III de la Constitución de Puerto Rico concede a la Asamblea Legislativa la facultad de crear, consolidar o reorganizar departamentos ejecutivos y definir sus funciones. Art. III, Sec. 16, Const. ELA, LPRA, Tomo I. De esta forma, la Asamblea Legislativa ha delegado a las agencias administrativas -adscritas al Poder Ejecutivo- una serie de facultades, a través de la ley orgánica o de leyes especiales. *R&B Power, Inc. v. Junta de Subastas ASG*, 213 DPR 685, 700 (2024); *FCPR v. ELA et al.,* 211 DPR 521, 536 (2023).

Como parte de esa delegación de poderes, tradicionalmente, le son otorgadas funciones cuasi legislativas y *cuasi judiciales* a las Agencias Administrativas. De la función cuasi legislativa se desprende el poder de reglamentar dentro de los límites y parámetros establecidos en su ley habilitadora. Mientras, que de la función *cuasi judicial* se le confiere el poder de adjudicar controversias dentro de la pericia de la agencia. Véase *R&B Power, Inc. v. Junta de Subastas ASG*, supra, pág. 700; *Caribe Comms., Inc. v. PRTC*, 157 DPR 203, 211 (2002).

A tenor con lo anterior, mediante la Ley Núm. 5 del 23 de abril de 1973, según enmendada, *Ley Orgánica del Departamento de Asuntos del Consumidor*, se crea la Agencia Gubernamental, del

Departamento de Asuntos al Consumidor, conocido comúnmente como DACo. Esta agencia fue creada como una especializada con el propósito primordial de vindicar e implantar los derechos del consumidor y proteger los intereses de los compradores. Artículo 3 de la Ley Núm. 5 del 23 de abril de 1973, supra, 3 LPRA sec. 341b.

### D. Reglamento de Garantías de Vehículos de Motor del DACo

Por otro lado, el legislador le adjudicó al DACo la responsabilidad de velar por el cumplimiento de todas las leyes relacionadas con los derechos de los consumidores. *Ortiz* v. *Soler Auto Sales et al,* 202 DPR 689,696 (2019). Las garantías requeridas a los fabricantes y distribuidores de vehículos de motor están reguladas por la Ley de Garantías de Vehículos de Motor, en adelante Ley de Garantías, Ley Núm. 7 de 24 de septiembre de 1979, 10 LPRA sec. 2051 *et seq.* DACo, en virtud de su deber de vindicar e implementar los derechos del consumidor y la Ley de Garantías, adoptó el Reglamento de Garantías de Vehículos de Motor, Reglamento Núm. 7159, del 6 de junio de 2006, en adelante, Reglamento 7159.

El referido reglamento persigue que los vehículos sirvan al propósito para el cual fueron adquiridos, reúnan las condiciones necesarias para garantizar al comprador la protección de la vida y propiedad, y prevenir las prácticas ilícitas en la venta de vehículos de motor en Puerto Rico. Regla Número 2, Reglamento 7159, supra. Con este fin, establece el referido cuerpo de normas lo siguiente:

> REGLA 23.2: PROHIBICIÓN A LOS VENDEDORES, Se prohíbe a los vendedores o a sus agentes retener suma alguna por concepto de depreciación del vehículo de motor en los casos en que el Departamento decreta la resolución del contrato de compraventa.
>
> REGLA 29.3: OPORTUNIDAD RAZONABLE PARA REPARAR DEFECTOS El Departamento, podrá a opción del consumidor, decretar la resolución del contrato o reducir

proporcionalmente su precio de venta de acuerdo a las disposiciones del Código Civil de Puerto Rico en aquellos casos en que el vendedor o su representante, dentro de los términos de la garantía, tuvo oportunidad razonable para reparar uno o más defectos, pero no quiso o no pudo corregirlos. Lo que constituye oportunidad razonable de reparar se determinará tomando en consideración las circunstancias particulares de cada caso.

### E. Vicios ocultos: saneamiento y redhibitorio

DACo, siendo el ente administrativo encargado de vindicar e implantar los derechos de los consumidores, debe estar en armonía con las disposiciones estatutarias, la jurisprudencia, las leyes especiales y sus propios reglamentos. *Ortiz* v. *Soler Auto Sales et al,* supra, pág. 696; *Rodriguez v. Guacoso,* 166 DPR 433, 439 (2005). Con el fin de salvaguardar los derechos de los consumidores a través de sus facultades y el derecho vigente en Puerto Rico, el DACo en ocasiones deberá mediar e interpretar negocios jurídicos, como la compraventa del vehículo de motor que nos ocupa.

Ahora bien, los contratos son negocios bilaterales que constituyen una de las fuentes de las obligaciones en nuestro ordenamiento. Art. 1041 del Código Civil, (1930), 31 LPRA sec. 2991.[26] Además, "[l]os contratos tienen fuerza de ley entre las partes". Art. 1044 del Código Civil, (1930), 31 LPRA sec. 2994. *Cruz, López v. Casa Bella y Otros,* 213 DPR 980, 994 (2024). Para que un contrato sea válido, es necesario que concurran los requisitos de consentimiento entre las partes, objeto cierto de la materia y causa de la obligación. *Aponte Valentín v. Pfizer Pharmaceuticals, LLC,* 208 DPR 263, 299 (2021).

---

[26] El 28 de noviembre de 2020, entró en vigor el nuevo Código Civil de Puerto Rico de 2020, Ley Núm. 55-2020. Sin embargo, el contrato en controversia fue celebrado en el año 2018, adquiriendo así vida jurídica previo a la fecha de vigencia del citado estatuto. En virtud de ello, y las disposiciones transitorias de los Artículos 1812 y 1813 del Código Civil de Puerto Rico de 2020, supra, seccs. 11717 y 11718, haremos referencia y esbozaremos el derecho a la luz del derogado Código.

El consentimiento sobre el objeto y la causa perfecciona el contrato. Art. 1210, del Código Civil, (1930), 31 LPRA sec. 3375. Para su validez y eficacia, este consentimiento debe ser "*la declaración de la voluntad libre de vicios*". *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 886 (2008) (Énfasis nuestro). El Art. 1363 del Código Civil, (1930), 31 LPRA sec. 3831 establece, que el saneamiento se refiere cuando el vendedor responde al comprador por la posesión legal y pacífica de la cosa vendida y de los vicios o defectos que tuviere.

También, el Tribunal Supremo de Puerto Rico ha expresado que, en el derecho de contratos, este deber de garantía se conoce como saneamiento por evicción perturbación jurídica del derecho adquirido o saneamiento por vicios ocultos perturbación económica de la posesión de la cosa. *Polanco v. Cacique Motors,* 165 DPR 156, 165-166 (2005). El saneamiento por vicios ocultos contempla situaciones en las que, **posterior a la entrega**, se evidencian en la cosa defectos intrínsecos, que exceden las imperfecciones menores que cabe esperar normalmente en un producto determinado. *Id.*, pág. 166.

Por su parte, el Código Civil de 1930 añade que, el vendedor responderá de la evicción, aunque nada se haya expresado del contrato. Art. 1364 del Código Civil del (1930) 31 LPRA sec. 3832. Sin embargo, si el comprador perdiere por efecto de evicción, una parte de la cosa vendida que sea de suma importancia para efectuar el negocio jurídico podrá exigir la recisión del contrato. Art. 1368 del Código Civil del (1930) 31 LPRA sec. 3836.

Con el fin de limitarnos a la pertinencia del caso, la descripción estatutaria del vicio redhibitorio reza en el Art. 1373 del Código Civil de (1930), 31 LPRA sec. 3841, de la siguiente manera:

> [e]l vendedor estará obligado al saneamiento por los defectos ocultos que tuviere la cosa vendida**, si la hacen impropia**

**para el uso a que se la destina o si disminuyen de tal modo este uso que, de haberlos conocido el comprador, no la habría adquirido o habría dado menos precio por ella**; pero no será responsable de los defectos manifiestos o que estuvieren a la vista, ni tampoco de los que no lo estén, si el comprador es un perito que, por razón de su oficio o profesión, debía fácilmente conocerlos.

**III.**

Bella International recurre ante nos mediante un recurso de "*Revisión Judicial*". En el mismo, solicita que se revoque la "*Resolución*" emitida por DACo, a los efectos de que procedía la resolución de un contrato de arrendamiento y la devolución de una cantidad de cincuenta y nueve mil setecientos noventa y nueve dólares ($59,799.00) a la parte recurrida más los intereses legales correspondientes.

En su *primer señalamiento de error,* la parte recurrente arguye que erró el DACo al concluir que la prueba presentada durante la vista administrativa estableció que las condiciones alegadas por la parte recurrida no fueron corregidas por el concesionario. *No le asiste la razón.*

Un examen del expediente que nos ocupa y de la transcripción de los procedimientos, nos muestra que desde que surgió la compraventa del auto en controversia, el recurrido tuvo que ir en numerosas ocasiones al concesionario para que corrigieran desperfectos mecánicos. Por tal razón, el recurrido incoó una querella ante DACo. Como parte de los procedimientos de rigor, DACo realizó una inspección donde efectivamente pudo determinar que el concesionario no instaló unas piezas que le habían ofrecido al recurrido y también pudo corroborar las múltiples ocasiones en las que el recurrido tuvo que dejar su auto para que fuera arreglado.

Como señalamos anteriormente, la Regla 22.9 del Reglamento Núm. 7159, supra, establece que DACo podrá decretar la resolución

de un contrato en aquellos casos en que el vendedor o representante tuvo una oportunidad razonable para reparar defectos, pero no quiso o no pudo corregirlos. La determinación de DACo respecto a la situación presentada fue conforme a derecho porque de una inspección realizada por ellos, se dio a conocer que los múltiples desperfectos sufridos por el recurrido no fueron subsanados y transcurrió un lapso de tiempo irrazonable para que dichos desperfectos no fueran debidamente arreglados.

Por otro lado, en el *segundo error,* el recurrente aduce que erró DACo al fundamentar la resolución del contrato en una condición que no fue corregida, sin establecer que constituía un vicio redhibitorio. *No le asiste la razón.*

Es el propio estatuto de la Ley de Garantías, supra, quien establece que los vehículos tienen que cumplir con el propósito para el cual fueron destinados. Además, tienen que reunir las condiciones necesarias para garantizar al comprador la protección de la vida y propiedad. Respecto al caso de epígrafe, debemos concluir que DACo actuó conforme a lo que precita la mencionada Ley porque el auto del recurrido tuvo múltiples problemas desde su compra, lo que hace evidente que no estaba cumpliendo con el propósito para el cual estaba destinado.

Como se ha discutido anteriormente, el *vicio redhibitorio* es un defecto oculto en el bien transmitido que de haberlo conocido el adquirente no lo habría adquirido o habría dado menos por él. Lo cierto es que la prueba desfilada ante el DACo, y la transcripción presentada, demostraron que el vehículo vendido al recurrido no estaba en las condiciones óptimas para darle el uso requerido.

Además, como reseñáramos previamente, el recurrido tuvo varios incidentes con la recurrente, respecto a los accesorios no disponibles que le habían sido ofrecidos como parte de la compra del vehículo. También, surge que Hernández Dávila regresó a Bella

International en numerosas ocasiones para que le arreglaran varias piezas de su auto. Esto último nos posiciona a concluir que en efecto DACo aplicó correctamente el derecho ya que la Ley de Garantías, supra, faculta a este Departamento a decretar la resolución del contrato. Además, se dan los elementos para determinar que hubo vicios de saneamiento y redhibitorio. Por lo tanto, DACo no tenía que establecer si hubo vicio redhibitorio porque en efecto si lo hubo y eso es una causa para dar por concluido un contrato.

Ahora bien, el recurrente plantea como *tercer error* que el DACo determinara que procedía la devolución de lo pagado por el vehículo objeto, cuando el negocio fue uno de arrendamiento financiero. *No le asiste la razón.*

El planteamiento del recurrente no es sostenible en derecho debido a que nuestro ordenamiento jurídico faculta a DACo a aplicar el derecho y las leyes existentes en casos como el de autos. DACo solo aplicó la ley que le confiere el derecho para determinar que se devuelva el dinero pagado por un vehículo que no pudo cumplir con los requisitos para el fin al que estaba destinado.

Por último, el recurrente establece en su *cuarto y último error*, que DACo obvió los acuerdos entre las partes y no aplicar la cantidad de $0.95 centavos por milla recorrida ante la resolución del contrato. *No le asiste la razón.*

En la situación de hechos ante nos, las partes pactaron un contrato suplementario en el cual se estableció que si se llegaba a desatar alguna eventualidad donde se declarara nulo el negocio jurídico, el comprador autorizaba expresamente al vendedor a retener cualquier suma acreditada por concepto de pronto de pago y la cuantía de noventa y cinco $0.95 centavos por milla recorrida por parte del comprador. Sin embargo, el estatuto de la Regla 22.9 del Reglamento Núm. 7159, supra, prohíbe que los vendedores retengan sumas de dinero por concepto de depreciación de un

vehículo cuando el Departamento decretase la resolución de un contrato de compraventa. En los hechos presentados, DACo dejó sin efecto el contrato de la compraventa efectuada entre las partes de epígrafe.

Por todo lo cual, no podemos reconocerle derechos a Bella International en virtud de un contrato suplementario que no obedece las normas legales.

**IV.**

Por los fundamentos antes expuestos, se *confirma* el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones